UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CHRISTOPHER BUCHANAN as Attorney-in-   :
Fact for LAURI A. BUCHANAN, as Co-
Administrator for the Estate of CYDNEY   :
BUCHANAN, a Minor, Deceased,[1]             :   **OPINION AND ORDER**
              Plaintiff,                                       :
v.                                                          :   18 CV 1566 (VB)
                                                          :
FREDERICK R. HESSE, M.D.,               :
              Defendant.                                  :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Christopher Buchanan brings this action on behalf of Lauri A. Buchanan, as co-administrator for the Estate of their deceased daughter, Cydney Buchanan, against Frederick R. Hesse, M.D. ("Dr. Hesse" or "defendant"), the former medical director of Arms Acres, a residential drug treatment facility located in Carmel, New York. Plaintiff brings claims against Dr. Hesse for medical malpractice, negligent supervision, and common law negligence. Plaintiff also seeks punitive damages against Dr. Hesse.

       Before the Court is Dr. Hesse's motion for summary judgment. (Doc. #98).

       For the following reasons, the motion is GRANTED.

       The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

## BACKGROUND

       The parties have submitted memoranda of law, declarations with exhibits, and statements of material fact pursuant to Local Civil Rule 56.1, which together reflect the following factual background.

---

[1]    The Clerk is directed to amend the caption as set forth herein.

Cydney Buchanan, a 17-year-old girl, was admitted to the detox unit of Arms Acres for substance abuse treatment on November 10, 2015. On the morning of November 12, 2015, Cydney was found unresponsive. She was transported by ambulance to Putnam Hospital, where she was pronounced dead.

Plaintiff originally sued Arms Acres, Dr. Hesse, and several other members of Arms Acres's staff. By Opinion and Order dated November 20, 2018, the Court granted a motion to dismiss filed by certain defendants and dismissed all claims other than those brought by Cydney's estate for conscious pain and suffering. (Doc. #41). Plaintiff later reached a settlement with Arms Acres and all other defendants. (Doc. #88). Dr. Hesse is the only remaining defendant in this action. Plaintiff's allegations against Dr. Hesse concern both his role as Cydney's attending physician and his role as medical director of Arms Acres.

I.  Dr. Hesse's Duties as Medical Director of Arms Acres

Arms Acres had several departments, each with its own director. (Doc. #98-5 ("Hesse Dep.") at ECF 28).[2] In 2015, Dr. Hesse was the medical director of Arms Acres and oversaw the medical department. (Id. at ECF 8–9). As medical director, he supervised and engaged in problem-solving with medical staff, including several physician assistants ("PAs") and nurse practitioners ("NPs"). (Id. at ECF 27; Doc. #104 ¶ 10). Registered nurses ("RNs") were part of a separate department, the nursing department. (Hesse Dep. at ECF 28, 44).

Additionally, Dr. Hesse was responsible for attending team and administrative meetings, ensuring medical staff had appropriate supervision and available backup on call, and for inventorying controlled substances. (Hesse Dep. at ECF 37). He also provided cardiopulmonary

---

[2] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

resuscitation ("CPR") certification to support staff in the medical department, including training with automated external defibrillators ("AED").  (Id. at ECF 49).

Dr. Hesse was, and continues to be, a licensed physician.  Dr. Hesse was the only medical doctor at the facility in 2015.  (Hesse Dep. at ECF 27, 37).  Dr. Hesse also served as the attending physician for all patients admitted to Arms Acres.  (Id. at ECF 10).  He ensured patient charts were complete, verified medical charts for accuracy, and discussed particular cases if medical staff requested his advice or help.  (Id. at ECF 27, 34–35).

Dr. Hesse was not typically informed of new admittances to Arms Acres.  (Hesse Dep. at ECF 32–33).  He only became involved in a patient's care if there was a "problem that involved the management of the detox residents or [a] patient wanted to leave."  (Id. at ECF 33–34).  A PA or NP prescribed a patient any necessary medication upon admittance.  (Id. at ECF 36).  Dr. Hesse did not have authority to hire additional medical staff, as Arms Acres's human resources department typically conducted hiring.  (Id. at ECF 48–49).

Although no written policy existed, Dr. Hesse informally communicated to Arms Acres's nursing staff that they should call medical staff "for anything they have [a] concern about." (Hesse Dep. at ECF 70).  Bryan Quackenbush, the RN on duty the night of November 11–12, 2015, testified nurses would notify a doctor in the event of a medical crisis, if a patient exhibited excessive vomiting, became violent, requested medication outside of a scheduled time, or if staff needed to send a patient to a hospital in an ambulance.  (Doc. #102-10 ("Quackenbush Dep.") at ECF 15).

Prior to Cydney Buchanan's admission in 2015, four patients had died while being treated at Arms Acres.  (Hesse Dep. at ECF 42).

II.     Cydney Buchanan

Cydney Buchanan was admitted to the detox unit at Arms Acres on November 10, 2015, for substance abuse treatment. (Doc. #104 at ¶ 1). She was seventeen years old, and had a history of using heroin, alcohol, marijuana, benzodiazepine, and Adderall. (Id. at ¶ 3).

PA Kobina Dwira conducted Cydney's initial medical assessment upon her admission. (Hesse Dep. at ECF 56–57; Doc. #104 at ¶ 4). Initial medical assessments were typically conducted by PAs or NPs. (Doc. #104 at ¶ 4). After Cydney's admission, she was assigned a one-to-one observer because she was an adolescent. (Id. at ¶ 5). The assigned observer on the night of November 11–12, 2015, was Runda Nesheiwat, a milieu counselor.[3] (Id.; Doc. #102-8 ("Nesheiwat Dep.") at ECF 9).

Cydney was prescribed Suboxone after her admission to Arms Acres. (Doc. #98-6 at ECF 68). In a notation under Cydney's Suboxone prescription, her medical records state: "Notify medical when Suboxone completed. Above orders VO. per Dr. Hesse." (Id.). Dr. Rita Aszalos, plaintiff's medical expert, testified that when a patient, like Cydney, was at risk for opioid withdrawals, a Suboxone prescription would have been appropriate. (Doc. #98-12 ("Aszalos Dep.") at ECF 68–69).

During the night of November 11–12, 2015, Cydney vomited twice. (Nesheiwat Dep. at ECF 9; Doc. #104 at ¶ 6). When Cydney vomited, Nesheiwat notified Bryan Quackenbush, the night-shift nurse on duty. (Nesheiwat Dep. at ECF 9–10). Both times, Quackenbush cleaned up Cydney's vomit and visually examined her. (Quackenbush Dep. at ECF 13–14).

---

[3]     Milieu counselors were present to assist and monitor patients, and to help run AA meetings. (Hesse Dep. at ECF 29; Nesheiwat Dep. at ECF 5). Milieu counselors were part of Arms Acres's clinical department, and received no medical training. (Hesse Dep. at ECF 29; Nesheiwat Dep. at ECF 4, 6, 14).

4

After Quackenbush ended his shift, the day-shift nurse checked Cydney and found her unresponsive. (Quackenbush Dep. at ECF 18–19). That nurse then called a "code," initiated emergency procedures, and worked with Quackenbush and an unidentified staff member to administer CPR to Cydney. (Id.; Doc. #104 ¶ 9). Quackenbush testified that, when the responding staff attempted to use an AED on Cydney, they discovered the pads accompanying the facility's AED were incompatible. (Id.). As a result, the AED did not work. (Id.).

Dr. Hesse never met Cydney Buchanan. (Hesse Dep. at ECF 53). He did not provide any notes on her medical chart. (Id. at ECF 56). He never discussed Cydney's care with any PA or NP, nor did he receive any call about her prior to her death. (Id. at ECF 68).

From 9:00 p.m. on November 11 to 9:00 a.m. on November 12, 2015, no PAs or NPs under Dr. Hesse's supervision were at Arms Acres. (Hesse Dep. at ECF 108). And no PAs or NPs were called to attend to Cydney prior to her being transported to Putnam Hospital. (Id.).

## DISCUSSION

### I. Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[4]

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.   Medical Malpractice

   A.   Legal Standard

The parties do not dispute that New York substantive law applies to plaintiff's medical malpractice claims. See Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 93 (S.D.N.Y. 2002), aff'd, 352 F.3d 41 (2d Cir. 2003) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").

Under New York law, "[t]he requisite elements of proof in a medical malpractice action are a deviation or departure from accepted practice and evidence that such departure was a proximate cause of injury or damage." Estiverne v. Esernio-Jenssen, 581 F. Supp. 2d 335, 350 (E.D.N.Y. 2008) (quoting Wiands v. Albany Med. Ctr., 29 A.D.3d 982, 983 (2d Dep't 2006)). "[I]n order to make out a prima facie case for medical malpractice, plaintiff must allege that (1) the physician owed a duty of care to the plaintiff; (2) the physician breached that duty by deviating from accepted medical practice; and (3) the alleged deviation proximately caused plaintiff's injuries." Flemming v. Velardi, 2003 WL 21756108, at *3 (S.D.N.Y. July 30, 2003).

"Under New York law a physician-patient relationship is created when the professional services of a physician are rendered to and accepted by another person for the purposes of medical or surgical treatment." I.M. v. United States, 362 F. Supp. 3d 161, 196 (S.D.N.Y. 2019). "Whether the physician's giving of advice furnishes a sufficient basis upon which to conclude that a physician patient relationship had arisen is a question of fact for the jury." Id. (quoting Rogers v. Maloney, 77 A.D.3d 1427 (2010)).

7

"In moving for summary judgment, [a] . . . defendant must make a prima facie showing that [he or she] 'did not depart from good and accepted medical practice or that any departure did not proximately cause plaintiff's injuries.'" Doane v. United States, 369 F. Supp. 3d 422, 446 (N.D.N.Y. 2019) (citing Ducasse v. N.Y.C. Health & Hosps. Corp., 148 A.D.3d 434, 435 (1st Dep't 2017)). "In order to rebut this showing and survive summary judgment, a plaintiff 'must submit evidentiary facts or materials,' typically through expert testimony, and 'demonstrate the existence of a triable issue of fact.'" Doane v. United States, 369 F. Supp. 3d at 446–47 (citing Alvarez v. Prospect Hosp., 68 N.Y.2d 320, 324 (1986)). "A plaintiff's expert testimony need only rebut the prima facie showing made by the defendants." Id. at 447 (citing Stukas v. Streiter, 83 A.D.3d 18, 30 (2d Dep't 2011)). "Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions. Such credibility issues can only be resolved by a jury." Feinberg v. Feit, 23 A.D.3d 517, 519 (2d Dep't 2005); see also Doane v. United States, 369 F. Supp. 3d at 449.

B.      Application

Dr. Hesse has made a prima facie showing that he did not depart from good and accepted medical practice. Dr. Hesse's medical expert, Dr. Maria Rita Aszalos, concluded Dr. Hesse performed his required duties as Medical Director of Arms Acres and was not negligent in his responsibilities in caring for Cydney.[5] (Doc. #98-10 ("Aszalos Report") at ECF 3). Dr. Aszalos concluded Cydney was not Dr. Hesse's patient because he had no contact or communication with her. (Id. at ECF 4). Dr. Aszalos further opined it was neither necessary for Dr. Hesse to be notified of Cydney's vomiting, nor was such a practice unusual. (Id.). Finally, Dr. Aszalos

---

[5]    Neither party has raised any argument regarding the reliability or qualifications of the other party's medical expert. Accordingly, the Court assumes, without deciding, that both experts are qualified.

concluded Dr. Hesse performed his required duties as medical director of Arms Acres.  (Id. at ECF 3).

Plaintiff has failed to rebut that showing.  Plaintiff has only proffered evidence suggesting Arms Acres, as a facility (as distinguished from Dr. Hesse), deviated from the applicable standard of care.  (See Doc. #98-11 ("Blum Report")).  In fact, in his report, Dr. Richard Blum, plaintiff's medical expert, does not address Dr. Hesse at all.  He concludes that Arms Acres's staff failed to provide Cydney with adequate medical oversight and supervision, failed to appropriately check her vital signs, and failed to "appropriately contact a doctor or physician following the incidents of vomiting, and the instances of refusing medication."  (Blum Report at ECF 1–2).  But these conclusions do not address Dr. Hesse's involvement, or lack thereof, in Cydney's care.  Dr. Blum's opinions only address whether other staff members should have sought to involve a physician.  Even drawing every reasonable inference in plaintiff's favor, Dr. Blum's expert report does not rebut Dr. Aszalos's conclusion that Dr. Hesse lacked a doctor-patient relationship with Cydney.

Plaintiff argues the notation in Cydney's medical records, "Above orders VO. per Dr. Hesse," demonstrates Dr. Hesse was directly involved in Cydney's care, and therefore he acted as her doctor.  (Doc. #103 ("Pl.'s Br.") at ECF 8; Doc. #98-6 at ECF 68).  Plaintiff argues this means Suboxone was prescribed per the "verbal orders" of Dr. Hesse (Pl.'s Br. at ECF 8), but points to no record evidence corroborating that interpretation.  Plaintiff neither questioned Dr. Hesse nor any other witness about that notation, and no record evidence supports plaintiff's contention that Dr. Hesse verbally prescribed Cydney Suboxone.  Likewise, Dr. Blum made no mention of this notation in his expert report.

9

In any event, even assuming plaintiff's speculative interpretation is correct, that notation alone does not rebut Dr. Hesse's prima facie showing that he did not deviate from the appropriate standards of care, nor does it create a genuine dispute of material fact. This is because even if Dr. Hesse verbally prescribed Cydney Suboxone, there is no record evidence supporting the notion that that prescription led to Cydney's death. Nor is there any record evidence that such a prescription would have deviated from accepted medical practice. In fact, Dr. Aszalos testified that when a patient was suspected of undergoing opioid withdrawal, like Cydney was, a Suboxone prescription would have been appropriate. (See Aszalos Dep. at ECF 68–69).

Accordingly, summary judgment must be granted with respect to plaintiff's medical malpractice claim.

III.     Negligent Supervision and Common Law Negligence

Plaintiff alleges Hesse was "negligent in his managerial and administrative duties in managing medical and non-medical staff." (Pl's Br. at ECF 7).

Although the third amended complaint ("TAC") and plaintiff's briefing are hardly models of clarity, the Court construes the TAC as bringing claims for negligent supervision and common law negligence against Dr. Hesse.

A.     Negligent Supervision

A claim for negligent supervision under New York law requires a plaintiff to demonstrate an employee was negligent. See Newton v. City of N.Y., 681 F. Supp. 2d 473, 487 (S.D.N.Y. 2010). Specifically, the plaintiff must demonstrate: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's

occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Id. at 487–88. "New York law does not permit a claim for negligent hiring, training, retention[,] or supervision where the defendants act in the scope of their employment." Schoolcraft v. City of New York, 103 F. Supp. 3d 465, 522 (S.D.N.Y. 2015) (collecting cases).

No record evidence demonstrates anyone involved in Cydney's death committed acts or omissions outside the scope of their employment. Accordingly, to the extent plaintiff asserts a claim against Dr. Hesse for negligent supervision of the Arms Acres's staff, Dr. Hesse's motion for summary judgment is granted and the claim is dismissed.

>B. Common Law Negligence

>>1. Legal Standard

To establish a prima facie case of negligence, a plaintiff must demonstrate: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." Solomon v. City of N.Y., 66 N.Y.2d 1026, 1027 (1985). "While [a] legislature can create a duty by statute, in most cases duty is defined by the courts, as a matter of policy." Lauer v. City of New York, 95 N.Y.2d 95, 100 (2000). "The existence and scope of an alleged tortfeasor's common law duty is an issue to be determined by the courts." Signature Health, LLC v. State, 28 Misc. 3d 543, 551 (N.Y. Ct. Cl. 2010). The relevant inquiry "is whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." Id. (quoting Pulka v. Edelman, 40 N.Y.2d 781, 782 (1976)). A duty is "owed to persons who have a distinctive and direct interest in proper performance and who will receive a special and peculiar injury if it is negligently performed." Id. at 551–52. In determining whether a duty exists, "courts must be mindful of the precedential, and consequential, future effects of their rulings,

and limit the legal consequences of wrongs to a controllable degree." Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d 222, 232 (2001).

Furthermore, statutes or administrative regulations may establish a duty and standard of care when the purpose of the legislation or regulation, in whole or in part, is "[i] to protect a class of persons which includes the one whose interest is invaded, [ii] to protect the particular interest which is invaded, [iii] to protect that interest against the kind of harm which has resulted, and [iv] to protect that interest against the particular hazard from which the harm results." Signature Health, LLC v. State, 28 Misc. 3d at 552 (quoting Restatement (Second) of Torts § 286); see also Restatement (Third) of Torts § 38 ("When a statute [or regulation] requires an actor to act for the protection of another, the court may rely on the statute to decide that an affirmative duty exists and to determine the scope of the duty.").

2. Application

Although neither party has successfully articulated the question before the Court, the determinative issue is whether Dr. Hesse, as medical director of Arms Acres, had an individual duty, separate and apart from any duty owed to Cydney as a physician, to promulgate policies and procedures for Arms Acres staff.[6] Because the existence of a duty is a question of law for the Court to determine, the court must address this question before deciding whether any genuine dispute of material fact exists with respect to a potential breach of that duty by Dr. Hesse.[7]

---

[6] The Court rejects Dr. Hesse's argument that plaintiff's negligence claim sounds in medical malpractice. The gravamen of plaintiff's negligence allegations against Dr. Hesse center upon his alleged failure to set appropriate policies and procedures for medical care at Arms Acres. (See, e.g., Doc. #98-5 at ECF 31–33, 42, 70); see also See Bleiler v. Bodnar, 65 N.Y.2d 65, 73 (1985) (Whether an action sounds in medical malpractice or negligence turns upon whether "the gravamen of the complaint is not negligence in furnishing medical treatment to a patient, but the . . . failure in fulfilling a different duty.").

[7] This issue is ripe for the first time at summary judgment because Dr. Hesse did not join the other defendants' motion to dismiss. (Doc. #41 at ECF 1).

Plaintiff argues Dr. Hesse, as medical director, was "directly and personally responsible for the medical services of [Arms Acres], . . . [and was] ultimately responsible for whatever medical care was or was not provided to Ms. Buchanan." (Pl.'s Br. at ECF 8).

The Court disagrees.

Applicable regulations promulgated by the New York State Office of Alcohol and Substance Abuse Services ("OASAS") and the federal Substance Abuse and Mental Health Services Administration ("SAMHSA") do not clearly establish individual liability for medical directors—notwithstanding any liability that may flow through them to their employer—for failing to do their job. Plaintiff points to no caselaw supporting this proposition, and this Court is not prepared to impose a duty without any supporting precedent from New York's courts. This is especially so when the Court is asked to do so without the benefit of clear briefing from either party, and when neither the text nor the history of the relevant regulations clearly support imposing such a duty.

Furthermore, being "mindful of the [possible] precedential, and consequential, future effects of [its] rulings, and [attempting to] limit the legal consequences of wrongs to a controllable degree," see Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d at 231, the Court declines to impose a duty based on OASAS and SAMHSA regulations in this case. Imposing such a duty may result in double recovery when both a medical director—as an employee—and his or her employing facility remain parties to an action. These considerations, among others, caution against gallivanting into whether the regulations cited by plaintiff impose a duty in this case.

Because the Court declines to impose an individual duty stemming from regulations applicable to Arms Acres, whether a genuine dispute of material fact exists is irrelevant and plaintiff's negligence claim must be dismissed.

IV. <u>Punitive Damages</u>

Punitive damages may be recovered only when "the defendant's conduct evinces a high degree of moral culpability or willful or wanton negligence or recklessness." <u>Gomez v. Cabatic</u>, 159 A.D.3d. 62, 73 (2d Dep't 2018).

In New York, "[a] demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action." <u>Yong Wen Mo v. Gee Ming Chan</u>, 17 A.D.3d 356, 359 (2d Dep't 2005). Accordingly, when all other causes of action are dismissed, no claim for punitive damages can be maintained.

Because the Court grants defendant's motion for summary judgment as to all of plaintiff's substantive claims against Dr. Hesse, the Court must also grant defendant's motion with respect to plaintiff's claim for punitive damages. See <u>Yong Wen Mo v. Gee Ming Chan</u>, 17 A.D.3d at 359.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #98) and close this case.

Dated: February 22, 2021
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge